UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| KYLE ANDERSEN, Individually and For Others Similarly Situated<br><br>v.<br><br>LEGAL CONCIERGE, INC. | Case No. **4:25-cv-1073**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Kyle Andersen (Andersen) brings this collective action to recover unpaid wages and other damages from Legal Concierge, Inc. (LCI).

2. LCI employed Andersen as one of its Straight Time Employees (defined below).

3. LCI pays its Straight Time Employees by the hour.

4. The Straight Time Employees regularly work more than 40 hours a week.

5. But LCI does not pay Andersen and its other Straight Time Employees premium overtime wages.

6. Instead, LCI pays its Straight Time Employees at multiple "straight time" hourly rates for hours worked, including hours worked over 40 in a workweek, but never pays them premium overtime wages (LCI's "no overtime pay scheme").

7. LCI's no overtime pay scheme violates the Fair Labor Standards Act (FLSA) by depriving Andersen and the other Straight Time Employees of premium overtime wages of at least 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court has general personal jurisdiction over LCI because LCI is a Texas corporation.

10. Venue is proper because LCI maintains its principal place of business in Collin County, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

11. Andersen was a trial consultant for LCI from approximately May 2021 through November 2023.

12. Throughout his employment, LCI paid Andersen under its no overtime pay scheme.

13. Andersen's written consent is attached as **Exhibit 1**.

14. Andersen brings this collective action on behalf of himself and other similarly situated LCI employees.

15. The similarly situated employees are defined as:

> **All employees paid under LCI's no overtime pay scheme during the past three years through final resolution of this matter ("Straight Time Employees").**

16. LCI is a Texas corporation.

17. LCI can be served through its registered agent: **Lisa D. Cain, 440 Summit Dr., Richardson, Texas 75081**.

## FLSA COVERAGE

18. At all relevant times, LCI was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

19. At all relevant times, LCI was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

20. At all relevant times, LCI was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as phones, computers, pens, and paper—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

21. At all relevant times, LCI had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

22. At all relevant times, Andersen and the other Straight Time Employees were LCI's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

23. At all relevant times, Andersen and the other Straight Time Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

24. LCI holds itself out as "the original and most experienced trial support company … [whose] mission is to ensure litigation teams are fully equipped to present their cases effectively."[1]

25. LCI says its services streamline the law firms' ability to more effectively represent the law firms' clients during trial.

26. LCI bills law firms by the hour for its services.

27. To meet its business objectives, LCI hires employees, like Andersen and the other Straight Time Employees, to provide trial support to law firm litigation teams.

---

[1] *See* https://legalci.com/ & https://legalci.com/lci-services/.

28. For example, Andersen worked for LCI as a trial consultant based out of LCI's headquarters in Collin County, Texas, from approximately May 2021 through November 2023.

29. Andersen's job duties included communicating with trial teams to set up trial site logistics, work with vendors to ensure food, beverage, laundry service, etc. were provided in accordance with the trial team's needs, IT set up, and communicating with trial teams to modify LCI's services to suit their needs.

30. LCI paid Andersen approximately $23.56 an hour.

31. Andersen regularly worked more than 40 hours a week for LCI.

32. Andersen typically worked approximately 12+ hours a day, 5 to 7 days a week (60 to 84+ hours a workweek).

33. But LCI failed to accurately report Andersen's hours worked on his paystubs.

34. Instead, LCI capped the hours it reported Andersen as working "on the clock" at 86.67 hours during each bi-monthly pay period

35. LCI labeled these on the clock hours as "Regular Pay," as shown on Andersen's pay statement for the period ending November 15, 2023:

| Earnings - Current | | | | |
|---|---|---|---|---|
| Date | Pay Description | Pay Rate | Hours/Units Paid | Pay Amount |
| 11-15-2023 | REGULAR PAY | 23.5568 | 86.67 | 2041.67 |
| 11-15-2023 | COMMISSION | 2801.4000 | 1.00 | 2801.40 |
| TOTAL | | | 87.67 | 4,843.07 |

36. But LCI regularly paid Andersen for fewer "Regular Pay" hours, for example during the pay period ending August 31, 2023:

4

**Earnings - Current**

| Date | Pay Description | Pay Rate | Hours/Units Paid | Pay Amount |
|---|---|---|---|---|
| 08-31-2023 | REGULAR PAY | 23.0760 | 66.67 | 1538.48 |
| 08-31-2023 | COMMISSION | 2622.6000 | 1.00 | 2622.60 |
| 08-31-2023 | PTO | 23.0760 | 8.00 | 184.61 |
| **TOTAL** | | | 75.67 | 4,345.69 |

37. And during the pay period ending October 15, 2023:

**Earnings - Current**

| Date | Pay Description | Pay Rate | Hours/Units Paid | Pay Amount |
|---|---|---|---|---|
| 10-15-2023 | REGULAR PAY | 23.5568 | 46.67 | 1099.40 |
| 10-15-2023 | COMMISSION | 513.2500 | 1.00 | 513.25 |
| 10-15-2023 | UNPAID TIME | 0.0000 | 40.00 | 0.00 |
| **TOTAL** | | | 87.67 | 1,612.65 |

38. In addition to the "Regular Pay" LCI paid Andersen, LCI paid Andersen what it calls "Commission" pay.

39. But this "Commission" is just another hourly rate.

40. LCI calculates the hourly rate for Andersen's "Commission" pay by taking 10% of the hourly rate LCI billed its clients for the hours Andersen worked.

41. Under this system, Andersen cannot earn more by working harder, rather than longer.

42. LCI thus coupled Andersen's "Commission" pay to the time he worked.

43. Andersen's "Commission" was merely additional hourly pay at an hourly rate.

5

44. Still, despite knowing Andersen regularly worked more than 40 hours a week, LCI did not pay him overtime.

45. Instead, LCI paid him the same $23.56 hourly wage and/or his hourly "Commission" pay, which was an hourly rate.

46. LCI never paid Andersen premium overtime wages of at least 1.5 times his regular rate of pay, based on all remuneration, for hours worked over 40 in a workweek.

47. LCI pays its other Straight Time Employees under the same or similar no overtime pay scheme it imposed on Andersen.

48. Like Andersen, LCI pays its other Straight Time Employees an hourly rate as "Regular Pay" and second hourly rate it labels as "Commission."

49. And LCI caps their "on the clock" hours at 86.67 per bi-monthly pay period.

50. Just as LCI maintains records of Andersen's "on the clock" hours, it also maintains records of the other Straight Time Employees' "on the clock hours."

51. And like Andersen, the other Straight Time Employees, regularly work more than 40 hours a workweek.

52. Every Straight Time Employee worked more than 40 hours in at least one workweek during the relevant period.

53. Indeed, like Andersen, the Straight Time Employees typically work approximately 60 to 60 to 84+ hours a workweek.

54. Despite knowing the Straight Time Employees regularly work overtime, LCI does not pay them premium overtime wages.

55. Instead, LCI pays them the same "Regular Pay" hourly rate for hours worked up to 86.67 hours per pay period and an hourly rate labeled "Commission," but no overtime wages.

**COLLECTIVE ACTION ALLEGATIONS**

56. Like Andersen, the other Straight Time Employees are victimized by LCI's no overtime pay scheme.

57. Other Straight Time Employees worked with Andersen and indicated they were paid in the same or similar manner under LCI's no overtime pay scheme.

58. Based on his experience with LCI, Andersen is aware LCI's no overtime pay scheme was imposed on other Straight Time Employees.

59. The Straight Time Employees are similarly situated in the most relevant respects.

60. Even if their job titles and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages.

61. Therefore, the specific job titles or locations of the Straight Time Employees do not prevent collective treatment.

62. Rather, LCI's no overtime pay scheme renders Andersen and the other Straight Time Employees similarly situated for the purpose of determining their right to overtime pay.

63. LCI's records reflect Andersen's and the other Straight Time Employees worked each pay period.

64. LCI's records also show it paid Andersen and the other Straight Time Employees "straight time," instead of "time and a half," for their overtime hours.

65. The back wages owed to Andersen and the other Straight Time Employees can therefore be calculated using the same formula and the same records.

66. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to LCI's records, and there is no detraction from the common nucleus of liability facts.

67. Therefore, the issue of damages does not preclude collective treatment.

68. Andersen's experiences are typical of the experiences of the other Straight Time Employees.

69. Andersen has no interest contrary to, or in conflict with, the Straight Time Employees that would prevent collective treatment.

70. Andersen has an interest in obtaining the unpaid wages owed to the Straight Time Employees under federal law.

71. Andersen and his counsel will fairly and adequately protect the interests of the Straight Time Employees.

72. Indeed, Andersen retained counsel with significant experience handling complex collective action litigation.

73. A collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

74. Absent this collective action, many Straight Time Employees will not obtain redress for their injuries, and LCI will reap the unjust benefits of violating the FLSA.

75. Further, even if some of the Straight Time Employees could afford individual litigation, it would burden the judicial system unduly.

76. Indeed, the multiplicity of actions would create hardship for the Straight Time Employees, the Court, and LCI.

77. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

78. LCI's no overtime pay scheme deprived Andersen and the other Straight Time Employees of the premium overtime wages they are owed under federal law.

79. There are many similarly situated Straight Time Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

80. The Straight Time Employees are known to LCI and are readily identifiable through LCI's business and personnel records.

### LCI'S VIOLATIONS WERE WILLFUL

81. LCI knew it was subject to the FLSA's overtime provisions.

82. LCI knew it controlled Andersen's and the other Straight Time Employees' hourly rates of pay.

83. LCI knew it controlled Andersen's and the other Straight Time Employees' method of pay.

84. LCI knew the FLSA required it to pay non-exempt employees, including Andersen and the other Straight Time Employees, overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

85. LCI knew Andersen and each Straight Time Employee worked more than 40 hours in at least one workweek during relevant period because it required them to do so.

86. LCI knew its Straight Time Employees were paid by the hour.

87. LCI knew it did not pay its Straight Time Employees "time and a half" for overtime.

88. LCI's failure to pay Andersen and its other Straight Time Employees required overtime was neither reasonable, nor was its decision not to pay these non-exempt employees overtime made in good faith.

89. LCI knew, should have known, or showed reckless disregard for whether its conduct violated the FLSA.

90. LCI knowingly, willfully, and/or in reckless disregard carried out its no overtime pay scheme that deprived Andersen and the other Straight Time Employees of overtime wages, in willful violation of the FLSA.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

91. Andersen brings his FLSA claims as a collective action on behalf of himself and the other Straight Time Employees.

92. LCI violated the FLSA by employing Andersen and the other Straight Time Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime of at least 1.5 times their regular rates of pay, based on all remuneration, for all hours worked after 40.

93. LCI's unlawful conduct harmed Andersen and the other Straight Time Employees by depriving them of the overtime wages they are owed.

94. Accordingly, LCI owes Andersen and the other Straight Time Employees the difference between the wages actually paid and the overtime wages actually earned.

95. Because LCI knew or showed reckless disregard for whether its no overtime pay scheme violated the FLSA, LCI owes these wages for at least the past 3 years.

96. LCI is also liable to Andersen and the other Straight Time Employees for an additional amount equal to all their unpaid wages as liquidated damages.

97. Finally, Andersen and the other Straight Time Employees are entitled to recover all reasonable attorney's fees and costs incurred in this action.

### JURY DEMAND

98. Andersen demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Andersen, individually and on behalf of the other Straight Time Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Straight Time Employees allowing them to join this action by filing a written notice of consent;

b. An Order finding LCI liable to the Straight Time Employees for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c. A Judgment against LCI awarding the Straight Time Employees all their unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

d. An Order awarding attorney's fees, costs, and expenses to the Straight Time Employees;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

|  |  |
|---|---|
| Dated: October 2, 2025 | Respectfully submitted,<br><br>**JOSEPHSON DUNLAP LLP**<br><br>By: */s/ Andrew W. Dunlap*<br>Michael A. Josephson<br>TX Bar No. 24014780<br>Andrew W. Dunlap<br>TX Bar No. 24078444<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Phone: (713) 352-1100<br>Fax:     (713) 352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>Richard J. (Rex) Burch<br>TX Bar No. 24001807<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Phone: (713) 877-8788<br>Fax:     (713) 877-8065<br>rburch@brucknerburch.com<br><br>**ATTORNEYS FOR ANDERSEN**<br>**& THE STRAIGHT TIME EMPLOYEES** |